IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Lori A. Kramitz, | ) | Civil Action No. 6:11-2037-CMC-KFM |
| | ) | |
| Plaintiff, | ) | **REPORT OF MAGISTRATE JUDGE** |
| | ) | |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

   This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

   The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

   The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on October 22, 2007, alleging that she became unable to work on March 23, 2007. The applications were denied initially and on reconsideration by the Social Security Administration. On May 29, 2008, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Mary L. Cornelius, an impartial vocational expert, appeared on September 23, 2009,

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

considered the case *de novo*, and on January 7, 2010, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on June 9, 2011. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since March 23, 2007, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease status post surgery, myofascial pain syndrome, and left shoulder tendonitis (20 C.F.R. §§ 404.1520(c), 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526, 416.920(d), 416.925, 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a significant range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift and carry up to 20 pounds rarely and 10 pounds frequently and stand, walk, and sit for 30 minutes at one time and for a total of 6 hours in an 8-hour day with a sit/stand option. The claimant can push and pull occasionally and is unable to climb ropes, ladders or other scaffolds. The claimant can occasionally kneel, balance, crouch, stoop, reach,

2

and crawl.  She is unable to turn her neck to the extremes, rapidly, maintain a static position or her neck, or reach and lift. The claimant should avoid hazards and vibration, and her concentration is limited to simple tasks.  Such a residual functional capacity is well supported by the weight of the evidence record.

6.  As a result of her residual functional capacity as described above, the claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).

7.  The claimant was born on January 3, 1963, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563, 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 1564, 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See S.S.R. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from March 23, 2007, through the date of this decision (20 C.F.R. § 404.1520(g), 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He

4

must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there

5

is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff suffered from a history of degenerative disc disease status post surgery and myofascial pain syndrome. As a result of these conditions, the plaintiff required the use of prescription medication, epidural steroid injections, and physical therapy. An MRI in April 2007 revealed degenerative disc changes at C5-6 and C6-7 with osteophyte complex resulting in stenosis (Tr. 227). An EMG/NCS failed to reveal any evidence of radiculopathy (Tr. 220-21). Strength testing was normal (Tr. 224). Following the failure of conservative care (*see, e.g.*, Tr. 234), the plaintiff underwent C5-6 and C6-7 anterior cervical discectomy and fusion, performed by William Wilson, M.D., in June 2007 (Tr. 264-69).

A follow-up MRI in July 2007 failed to reveal any residual/recurrent protrusion or significant stenosis or neural impingement (Tr. 245). At that time, the plaintiff reported that she had hurt her back after skimming the pool (Tr. 321). X-rays of the lumbar and thoracic spine in August 2007 were unremarkable (Tr. 274-75). She reported that her symptoms flared up when she was riding a jet ski (Tr. 319). No motor deficits were noted upon examination. (Tr. 320). Due to continued complaints of pain with some range of motion limitations found upon examination, the plaintiff was diagnosed with myofascial pain syndrome in September 2007 (Tr. 312). As a result of her condition, the plaintiff received frequent chiropractic massages (Tr. 355-73, 400-02, 508-26).

The plaintiff was seen by Clarence Legerton, M.D., a rheumatologist, on October 9, 2007. Dr. Legerton noted that the plaintiff was having myofascial pain, neck pain, shoulder pain, back pain, and fatigue (Tr. 312-14).

On October 10, 2007, Dr. Wilson noted that, despite surgery, the plaintiff continued to have pain. The plaintiff told Dr. Wilson that she had seen Dr. Legerton, who

told her she had symptoms consistent with fibromyalgia.  She stated that she had started taking Lyrica, which had not helped much.  The plaintiff stated that muscle relaxants like Zanaflex helped the most (Tr. 318).

In December 2007, Mary Lang, M.D., examined the plaintiff's medical record and determined her residual functional capacity (Tr. 387-94).  Dr. Lang opined that the plaintiff retained the residual functional capacity to perform a range of light work, with some postural and reaching limitations (Tr. 388-91).

Vanessa Hinson, M.D., Ph.D., examined the plaintiff in April 2008 for a neurologic consultation.  Upon examination, the plaintiff was found to have good memory and attention with normal muscle strength, bulk, and tone.  The plaintiff also had a coordinated gait and intact coordination.  Dr. Hinson noted that conservative treatment had not helped the plaintiff's pain and she was "significantly disabled by this."  She recommended botulinum toxin injections in the trapezius muscle bilaterally (Tr. 404-405).

Later that month, William Cain, M.D., examined the plaintiff's medical record and determined her residual functional capacity (Tr. 408-15).  Dr. Cain opined that the plaintiff retained the residual functional capacity to perform a range of light work, with some postural and reaching limitations (Tr. 409-12).

An electrodiagnostic study in September 2008 indicated left C5-6 radiculopathy (Tr. 417).  Examination revealed 4/5 strength with a restricted range of motion of the shoulders and cervical spine, which was 50% restricted in all directions except for forward flexion.  The plaintiff's Lyrica dosage was adjusted.  Physical therapy was recommended as deconditioning was felt to have significantly impacted the plaintiff's symptoms (Tr. 422).

The plaintiff was referred to Artur Pacult, M.D. for a second opinion on December 10, 2008.  Upon examination, the plaintiff was noted to have a normal gait with 4/5 left-sided strength and 5/5 right-sided strength.  Sensory examination was normal (Tr.

7

446). Follow-up x-rays of the cervical spine revealed Grade I anterolisthesis from C7 to TI (Tr. 451). A CT/myelogram testing in January 2009 failed to reveal any recurrent herniation or protrusion but indicated some slight abnormalities (Tr. 449-50). On January 12, 2009, Dr. Pacult ordered an epidural blood patch due to the plaintiff's severe postural headaches (Tr. 448). The plaintiff underwent a series of epidural steroid injections (*see, e.g.*, 496-506).

An MRI in March 2009 revealed degenerative changes of the cervical spine (Tr. 491-92). Follow-up examinations by Georgia Roane, M.D., showed that there was no significant change in the plaintiff's condition (Tr. 453, 456-57). The plaintiff had slightly diminished strength on the left and limited mobility of the neck. There was some soft tissue tenderness of the trapezius musculature of the upper back, as well as tenderness of the sacroiliac region bilaterally. Both hips showed full flexion, and there was no significant abnormality of the knees. Straight leg raising resulted in low back pain, but no radicular symptoms (Tr. 457). Dr. Roane recommended physical therapy.

The plaintiff participated in physical therapy from July 6, 2009, through August 19, 2009. The plaintiff completed her prescription of physical therapy (Tr. 463). The discharge summary states that the plaintiff' "refuse[d] further treatment" (Tr. 459-61).

In March 2008, the plaintiff reported that she lived with her 15 year old daughter and 20 year old son. She stated that she woke up at 5:30 and woke her daughter up and that she would sometimes take her daughter to school. She said that "after she gets her [daughter] off to school," she rested and then did laundry and cleaned. She reported that she picked her daughter up from school and then made dinner. She said that she was able to shop by herself, but that she usually needed help. She reported that she communicated with her best friend and visited with her neighbor. She said she went to massage therapy once a week (Tr. 193).

At the hearing, the plaintiff testified that she drove occasionally, up to 30 miles per week (Tr. 33). She said she was 46 years old and live with her son and daughter (Tr.

8

34).  She testified that her last job was at a retail store, but that she had to stop working because she could not move her back and neck (Tr. 35).  She said that her doctor had limited her no lifting more than 20 pounds, no prolonged sitting, and no prolonged standing (Tr. 44).  She said that she could not return to work due to side effects from medication (Tr. 47).  She said that physical therapy made her condition worse (Tr. 48).  She said she had trouble sitting and needed to move her head because it was difficult to sit in one position (Tr. 57).  She thought she could sit for 20 to 30 minutes (Tr. 57).  She said that she could walk a block (Tr. 58).  She said she did no lifting, but when the ALJ pointed out that she had a purse, she said she could lift her dog, which weighed 13 pounds (Tr. 59).

Mary Cornelius, the vocational expert, also testified at the hearing (Tr. 60). The ALJ asked Ms. Cornelius to consider a hypothetical person the same age as the plaintiff, with the same education and work experience, who had the residual functional capacity to: sit for four hours in an eight-hour day, approximately 30 minutes at one time; stand and walk four hours in an eight-hour day, approximately 30 minutes at one time; lift 10 pounds frequently and 20 pounds rarely; push and pull occasionally; climb ramps and stairs occasionally; never climb ropes, ladders, and scaffolds; and occasionally perform other postural activities and reach (Tr. 63).  In addition, the person would not be able to turn her neck rapidly, could not maintain a static position of her neck, and could not reach and lift (Tr. 63).  The person needed to avoid hazards and vibration and was limited to simple tasks (Tr. 64).  Ms. Cornelius interpreted the neck limitation to mean that the person could not keep her neck steady and testified that the plaintiff could not perform any work.  The ALJ clarified that the person could move her neck, but was unable to maintain a static position (Tr. 64-65).  Based upon that clarification, Ms. Cornelius testified that the person could perform could perform the light, unskilled jobs of garment folder, plastic assembler, and office helper.  She identified the number of each job in the state and national economies (Tr. 65-66).

## **ANALYSIS**

The plaintiff was 44 years old on the alleged disability onset date and was 47 years old on the date of the ALJ's decision.  She has a high school education and past relevant work experience as a shoe department manager, service advisor, general office clerk, and office manager (Tr. 62, 141, 163, 179).  As set forth above, the ALJ found that the plaintiff's degenerative disc disease status post surgery, myofascial pain syndrome, and left shoulder tendonitis were severe impairments.  The ALJ further determined that the plaintiff could perform a significant range of light work and was able to lift and carry up to 20 pounds rarely and 10 pounds frequently, and stand, walk, and sit for 30 minutes at one time and for a total of 6 hours in an 8-hour day with a sit/stand option.  The plaintiff could push and pull occasionally and was unable to climb ropes, ladders or other scaffolds.  The plaintiff could occasionally kneel, balance, crouch, stoop, reach, and crawl.  She was unable to turn her neck to the extremes, rapidly, maintain a static position or her neck, or reach and lift.  The ALJ also found the plaintiff should avoid hazards and vibration, and her concentration was limited to simple tasks.  The plaintiff argues the ALJ erred in (1)  finding she was not credible; (2)  failing to properly weigh the medical opinions; and (3)  failing to ask a proper hypothetical question.  The plaintiff further argues that the Appeals Council erred in not making detailed findings and not giving proper weight to new evidence that she submitted.

### *Credibility*

The plaintiff argues that the ALJ failed to properly assess her credibility.  The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process.  First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or

10

> psychological abnormalities and which could reasonably be
> expected to produce the pain or other symptoms alleged. . . .
> It is only after a claimant has met her threshold obligation of
> showing by objective medical evidence a medical impairment
> reasonably likely to cause the pain claimed, that the intensity
> and persistence of the claimant's pain, and the extent to which
> it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. It "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)    the individual's daily activities;

(2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)    factors that precipitate and aggravate the symptoms;

(4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

11

(6)     any measures other than treatment the individual uses
         or has used to relieve pain or other symptoms (e.g., lying
         flat on his or her back, standing for 15 to 20 minutes
         every hour, or sleeping on a board); and

(7)     any other factors concerning the individual's functional
         limitations and restrictions due to pain or other
         symptoms.

*Id.* at *3.

In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565.  However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p).

The court further acknowledged:

While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

12

*Id*. at 565 n.3 (quoting *Craig v. Chater*, 76 F.3d 585, 595 (4ᵗʰ Cir. 1996)). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4ᵗʰ Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled.  However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

Here, the ALJ considered the plaintiff's subjective complaints, but found that her complaints were not entirely credible (Tr. 21-22).  The ALJ first considered the medical evidence.  For example, the ALJ noted that physician examination had generally been normal, except for some limitations in the plaintiff's range of motion and some limited left sided weakness (Tr. 22; *see, e.g.*, Tr. 404).  She further noted that, following surgery, x-rays and MRIs did not reveal further herniation or impingement (Tr. 22; *see, e.g.*, Tr. 245, 274-75, 449-51, 492).  The ALJ also noted that the plaintiff refused further physical therapy (Tr. 22; *see* Tr. 459).  Also, while the plaintiff claimed adverse side effects from medication (Tr. 47), the ALJ noted that treatment notes did not show any significant complaints or findings of side effects (Tr. 22).

The ALJ did not discredit the plaintiff's allegations solely because they were not substantiated by objective evidence, but instead considered it as one factor in assessing the plaintiff's credibility. *See*  SSR 96-7p, 1996 WL 374186, at *6.  She also appropriately considered the plaintiff's daily activities (Tr. 22).  The ALJ noted that the plaintiff was able to get her daughter off to school in the morning; sometimes drive her

daughter to school; wash laundry; clean the house; pick up her daughter; watch television; prepare meals; grocery shop; maintain friendships; and go to massage therapy (Tr. 22; *see* Tr. 193). In addition, she noted that the plaintiff testified that she could drive up to 30 miles per week (Tr. 22; *see* Tr. 33). The ALJ also observed that the plaintiff reported that she had ridden a jet ski and skimmed her pool during the period she claimed she was disabled (Tr. 22; *see* Tr. 320-21). When assessing a claimant's credibility, the ALJ may consider daily activities, which, in this case, undermined the plaintiff's complaints. *See* 20 C.F.R. § 404.1529(c)(3); *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she attended church, read, watched television, cleaned house, washed clothes, visited relatives, fed pets, cooked, managed finances, and performed stretching exercises).

The plaintiff argues that the ALJ erred in considering some of her activities. She first claims that the ALJ erred in finding that she got her daughter off to school. However, in a report of contact, the plaintiff listed activities that she performed "after she gets her [daughter] off to school . . ." (Tr. 193). Thus, as argued by the Commissioner, the ALJ's characterization of that portion of the statement was accurate. The plaintiff does not dispute that she went shopping by herself and rode a jet ski. While she claims that she only went shopping once and that riding the jet ski caused a flare-up, that does not change the fact that she engaged in those activities, and the ALJ could refer to them to determine her credibility. Moreover, the ALJ did not consider the activities as substantial gainful activity, as the plaintiff alleges (pl. brief 7). Instead, the ALJ referred to these activities in determining the plaintiff's testimony was not entirely credible.

The plaintiff also takes issue with the ALJ's reference to her being discharged from physical therapy for refusing further treatment (Tr. 22; *see* pl. brief 8). The plaintiff argues that the evidence shows that she completed her prescription for physical therapy (Tr. 463), and, while she got temporary relief from therapy, her pain came right back (Tr.

14

465).  Thus, she argues that the ALJ erred in failing to refer to any of her problems with physical therapy.  This court finds that any error in this regard is harmless as the ALJ's finding is supported by other substantial evidence. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding the ALJ's error harmless where the ALJ would have reached the same result notwithstanding).

The ALJ considered one other factor in assessing the plaintiff's credibility: the plaintiff smoked despite her physicians recommending that she stop and the negative impact on her health (Tr. 22; *see, e.g.*, Tr. 447 (Dr. Pacult's notes stating that he "reviewed the [MRI] with the [plaintiff] and informed her that, unless she stops smoking, even if she does suffer a nonunion, there is a significant chance she may not benefit from additional surgery.")). The failure to follow treatment advice undermined the plaintiff's complaints. *Cf. Mickles*, 29 F.3d at 921. *See Gregory v. Commissioner*, C.A. No. 1:09-413-HMH-SVH, 2010 WL 3046991, at *11 (D.S.C. July 12, 2010) (finding that ALJ did not err in considering the claimant's failure to stop smoking when instructed to do so by her doctors in assessing the claimant's credibility), *Report and Recommendation adopted by* 2010 WL 3046989 (D.S.C. Aug. 2, 2010).

Based upon the foregoing, this court finds that the ALJ's credibility analysis is based upon substantial evidence.

### *Medical Opinions*

The plaintiff next argues that the ALJ erred in her evaluation of the opinion of Dr. Hinson, who examined the plaintiff on April 8, 2008.  Dr. Hinson found that the plaintiff was "significantly disabled" (Tr. 404-405).

The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list:  (1)  the length of the treatment relationship and the frequency of the examinations; (2)  the nature and extent of the

15

treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

The ALJ noted that Dr. Hinson examined the plaintiff on only one occasion (Tr. 22). *See* 20 C.F.R. § 404.1527(c)(2)(i) (stating an ALJ should consider whether a treating source has seen a claimant "a number of times and long enough to have obtained a longitudinal picture" of the claimant's impairment). She found that the opinion was inconsistent with Dr. Hinson's findings upon examination of the plaintiff, which did not

16

support an opinion that the plaintiff was "significantly disabled" (Tr. 22). Dr. Hinson's neurological examination showed that the plaintiff's mental status was normal; her cranial nerves II-XII were normal; she had normal muscle strength, bulk, and tone; she had stable and coordinated station and gate; her coordination was intact with no abnormal movements; her sensation was intact throughout except for an ill-defined sensation of "fuzziness" in her left hand; her tendon reflexes were 2+ in the upper extremities and 1+ in the lower extremities; and her trapezious was bilaterally tight and mildly hypertrophied (Tr. 404). The ALJ also noted that Dr. Hinson's opinion was based upon the plaintiff's subjective complaints (Tr. 22). Based upon the foregoing, this court finds that the ALJ properly considered Dr. Hinson's opinion, and her decision to give it limited weight is based upon substantial evidence.

The plaintiff also argues that the ALJ did not "properly state the facts" (pl. brief 7). As argued by the Commissioner, while the plaintiff alleges that the ALJ did not mention the assessment of Dr. Roane that the plaintiff had limited neck range of motion and right extremity mobility, she is incorrect. The ALJ did note Dr. Roane's findings, albeit without mentioning Dr. Roane by name. The ALJ observed that Dr. Roane's treatment notes did not show a significant change in her condition (Tr. 23 (citing to Exhibit 18F)). Moreover, the ALJ included limitations consistent with Dr. Roane's findings, such as the inability to lift and reach, and the limitations on neck use (Tr. 20).

The ALJ also noted that the State agency physicians had found the plaintiff was not disabled (Tr. 22; *see* Tr. 387-94, 408-15). The ALJ reasonably gave "some weight" to their opinions because they were consistent with the evidence of record, which showed that the plaintiff retained the ability to perform some work (Tr. 22). *See* 20 C.F.R. §404.1527(e)(2)(i) (ALJ must consider the findings of a State agency medical consultant because such consultants are highly qualified physicians "who are also experts in Social Security disability evaluation"); SSR 96-6p, 1996 WL 374180, at *2 (opinions of state

17

agency medical consultants must be considered and weighed as those of highly qualified experts).

Based upon the foregoing, the ALJ's findings are based upon substantial evidence, and these allegations of error are without merit.

### *Hypothetical*

The plaintiff argues that the ALJ's hypothetical question to the vocational expert was confusing, and thus the case should be remanded to clarify the testimony of the vocational expert (pl. brief. 10). "[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted).

The ALJ presented a hypothetical to the vocational expert of a person the same age as the plaintiff, with the same educational and work background, and the following residual functional capacity: she can alternate between sitting and standing, and walking is permissible. She can lift up to 10 pounds frequently and 20 pounds rarely. She can push and pull occasionally and can occasionally climb stairs and ramps. She is unable to climb ropes, ladders or other scaffolds. The person can occasionally kneel, balance, crouch, stoop, reach, and crawl. The hypothetical person is unable to turn her neck to the extremes, rapidly, maintain a static position or her neck, or reach and lift. She should avoid hazards and vibration, and her concentration is limited to simple tasks (Tr. 63-64).

The vocational expert first testified that such a person could not perform any jobs (Tr. 64). However, in discussing the hypothetical with the ALJ, the expert stated that she understood the ALJ to state that the hypothetical person could not "maintain steadiness of the neck," when the ALJ had actually stated the person could not maintain "a static position," meaning that she has to be able to move her neck (Tr. 65). With this clarification, the vocational expert testified that the person could perform the unskilled, light occupations

of garment folder, plastic assembler, and office helper. She further testified about the number of those jobs in the regional and national economies (Tr. 65-66). The plaintiff's attorney then questioned the vocational expert and specifically asked her what her understanding was of the "requirement of the hypothetical of cannot turn neck rapidly or maintain static position of the neck" (Tr. 66). The vocational expert responded that she understood that to mean the person could have some movement of the neck, but she could not have rapid movement and could not keep her neck in just one place (Tr. 66-67).

The ALJ noted in her decision that the vocational expert testimony was consistent with the *Dictionary of Occupational Titles* ("*DOT*") except with regard to the at-will sit/stand work requirement, which the vocational expert testified was not found within the *DOT* but in her experience was available with respect to all three identified occupations (Tr. 24; *see* Tr. 66). The ALJ further found the number of jobs identified was significant (Tr. 24-25). 20 C.F.R. § 404.1566(d)-(e) (in determining whether work exists in the national economy in significant numbers, the adjudicator will take administrative notice of reliable job information available from various publications, including the *DOT*, and may use a vocational expert).

Based upon the foregoing, this court finds that the ALJ reasonably relied on the vocational expert's testimony to find the plaintiff is able to do other work that exists in significant numbers in the national economy.

### Appeals Council Evidence

Finally, the plaintiff complains that the Appeals Council erred in not making detailed findings as to the new evidence she submitted. In *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), the Fourth Circuit held that the Appeals Council is not required to articulate its rationale for denying a request for review. *Id*. at 706. The Fourth Circuit then stated that when the Appeals Council receives additional evidence and denies review, the issue for the court is whether the ALJ's decision is supported by substantial evidence. *Id*. at 707. Under

19

the particular facts presented in *Meyer*, the court determined that the new evidence in that case was not "one-sided" and that upon consideration of the record as a whole, the court could not determine whether substantial evidence supported the ALJ's denial of benefits. *Id*. at 707.  In *Meyer*, the ALJ determined that the record lacked certain evidence the ALJ deemed critical; the plaintiff subsequently obtained this evidence and presented it to the Appeals Council. *Id*.  On this record, the Fourth Circuit concluded that "no factfinder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." *Id*.  Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," the case had to be remanded to the ALJ for further fact finding. *Id*.

Here, the plaintiff presented additional evidence to the Appeals Council with her request for review (Tr. 529-84).  Included in that evidence was a letter dated January 21, 2010 (two weeks after the ALJ's decision), in which Steven Poletti, M.D., notes that the plaintiff had limited range of motion in her neck and decreased reflexes in her hands (Tr. 540).  Evidence from later dates shows that the plaintiff had a stimulator placed in her skin to alleviate her pain, but it had to be removed due to infection and swelling (Tr. 535-36, 565).  Examinations showed that, while the plaintiff was in pain and had limited range of motion in the neck, she had normal strength (*see, e.g.*, Tr. 538).  In May 2010, she claimed she had pain of three out of ten, and in July 2010, she had pain of four out of ten (Tr. 548).  In October 2010, the plaintiff described her pain as a seven-eight out of ten (Tr. 538).  The plaintiff had a nerve conduction study by John Johnson, M.D., of the Southeastern Spine Institute on November 1, 2010 (Tr. 529-34).  The impression was "normal needle EMG" and "normal nerve conduction of the bilateral upper extremities" (Tr. 529).  In December 2010, the plaintiff described her pain as eight-nine out of ten (Tr. 539).  The Appeals Council reviewed the additional evidence and incorporated it into the record but found it did not provide a basis for changing the ALJ's decision (Tr. 1-4).

Reviewing the record as a whole, including the additional evidence submitted to the Appeals Council, this court finds that remand is not warranted as substantial evidence supports the ALJ's decision. First, as noted by the Commissioner, the report from Dr. Poletti dated January 14, 2010, reflects that the plaintiff had decreased reflexes in her hands, but there is no indication of how the loss of reflexes would affect the plaintiff's ability to work or that it would result in more limitations than found by the ALJ (Tr. 540). Further, it appears that at the time he wrote the letter, Dr. Poletti had only treated the plaintiff for one month (*see* Tr. 572, 575-76). In addition, a report from Mark Netherton, M.D., dated January 25, 2010, is consistent with the ALJ's decision, as the examination results are similar to those considered by the ALJ (Tr. 580). Dr. Netherton noted that the plaintiff was in no apparent distress with full range of motion in the cervical spine, some pain with flexion and extension, diffuse tenderness in the back muscles, good grip strength in her hands, and some limitation of motion in the upper extremities (Tr. 579-80). This court finds that, unlike in *Meyer*, the evidence submitted by the plaintiff does not fill an evidentiary gap that played a role in the decision of the ALJ, and there is little in the submissions that is not cumulative of the evidence before the ALJ. Based upon the foregoing, this allegation of error is without merit.

## CONCLUSION AND RECOMMENDATION

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

December 12, 2012
Greenville, South Carolina

21