**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Lori A. Kramitz, ) | C/A No. 6:11-2037-CMC-KFM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **OPINION & ORDER** |
| Carolyn W. Colvin, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff appealed pursuant to 42 U.S.C. § 405(g). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, *et seq.*, D.S.C.

The Report, filed on December 12, 2012, recommends that the decision of the Commissioner be affirmed. Dkt. No. 31. Plaintiff filed objections to the Report on January 31, 2013 (Dkt. No. 36), to which the Commissioner replied on February 19, 2013 (Dkt. No. 37). For reasons stated below, the court adopts the Report and affirms the Commissioner's decision.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has

---

[1] Carolyn W. Colvin is substituted as the Defendant in this action because she became the Acting Commissioner of Social Security on February 14, 2013. *See* Dkt. No. 37 at 1 n.1. As provided in the Social Security Act, "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." 42 U.S.C. § 405(g)

no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence and reached through application of the correct legal standard. *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he

courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## DISCUSSION

Plaintiff objects to the Report's findings as to (1) the credibility analysis, (2) analysis of physician opinions, (3) the hypothetical from the Administrative Law Judge ("ALJ") to the Vocational Expert ("VE"); and (4) new evidence submitted to the Appeals Council. Plaintiff's objections are the same issues raised in her brief to the Magistrate Judge.

**Credibility Analysis.** Plaintiff argues that the ALJ failed to properly assess her credibility. First, Plaintiff argues that the Magistrate Judge, and the ALJ, did not consider all of the medical evidence. Plaintiff contends that although the Report references one MRI (Tr. 245), the Report failed to acknowledge that there were two additional MRIs, showing a disc protrusion at C5-6 in April 2007 (Tr. 248) and a "subchondral cyst formation of the left shoulder" in July 2007 (Tr. 247). The disc protrusion at C5-6 that was captured by the April 2007 MRI was explained by the ALJ. The ALJ explained that "[f]ollowing the failure of conservative care, the claimant underwent C5-6 and C6-7 cervical diskectomy and fusion in June 2007." Tr. 23. Further, the ALJ specifically explained that an "MRI of the left shoulder in July 2007 revealed supraspinatus tendinitis without evidence of a rotator cuff tear and a subchondral cyst formation involving the posterior aspect of the glenoid." *Id.* Plaintiff has, therefore, failed to identify any error by the ALJ in the treatment of Plaintiff's MRIs.

Plaintiff argues that the Magistrate Judge misstated that she refused physical therapy. The Magistrate Judge, like the ALJ, cited a medical record indicating that Plaintiff "refused further

physical therapy." Report at 13; Tr. 22 (citing Tr. 459) (indicating that Plaintiff was discharged from physical therapy because "Patient refuses further treatment"). Plaintiff testified that physical therapy made her neck worse, which Plaintiff argues is the reason she terminated physical therapy and not that she simply refused further treatment. Dr. Roane's records indicate that Plaintiff informed her that "physical therapy has not helped." Tr. 453. As properly explained in the Report, to the extent that the ALJ erred by relying on Plaintiff's refusal of additional physical therapy as one reason to discount her credibility, the court finds that error is harmless because the ALJ's decision to discount Plaintiff's subjective complaints of pain is supported by other substantial evidence. *See* Report at 15 (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (finding the ALJ's error harmless where the ALJ would have reached the same result notwithstanding)).

Plaintiff "objects to the Magistrate [Judge's] findings concerning the issue of her daily activities." Dkt. No. 36 at 2. Plaintiff contends that the ALJ did not properly consider that she only she took her daughter to school sometimes, and her ex-husband would drive her daughter to school two or three days a week. In describing Plaintiff's daily activities, the ALJ properly stated that Plaintiff would "sometimes drive her daughter to school." Tr. 22. Plaintiff also contends that the ALJ erred by not mentioning that she requires assistance from her children when she grocery shops. The record contains evidence that Plaintiff grocery shops alone. Tr. 193 ("She states that today she did the grocery shopping by herself."). Even if one of Plaintiff's children usually assists her in grocery shopping, Plaintiff has failed to show any error in not adding this qualification to the ALJ's finding that she grocery shops. Finally, Plaintiff contends that the ALJ has taken "[t]he issue of the jet ski and the skin [*sic*] pool . . . out of context." The ALJ, however, properly considered Plaintiff's activities, including her report that she rode a jet ski and skimmed her pool, after the alleged onset

date of disability in analyzing her credibility.

Finally, as to the credibility analysis, Plaintiff contends that the ALJ did not analyze the reports of Carolina Spine and Sports Rehab Specialists. According to Plaintiff, "[t]hese reports show that Plaintiff has a 50% limited range of motion in all directions of her spine and the ALJ should have reached a decision that the Plaintiff is disabled." Dkt. No. 36 at 3 (citing Tr. 415-423). The cited reports, however, state that Plaintiff's "[r]ange of motion of the cervical spine is 50% restricted in all directions except for forward flexion." Tr. 422. Further, the ALJ noted that Plaintiff had "some limitations in her range of motion." Tr. 22. *See also* Tr. 23 ("Examination revealed 4/5 strength with a restricted range of motion of the shoulders and cervical spine."). Plaintiff has also failed to state how that specific finding prevents Plaintiff from performing light work as limited in her RFC.[2] The court, therefore, rejects Plaintiff's objections as to the ALJ's credibility analysis.

**Medical Opinions.** Plaintiff objects to the Magistrate Judge's analysis of Dr. Roane's reports, arguing that the ALJ did not properly consider Dr. Roane's treatment notes. Dkt. No. 36 at 3. Dr. Roane examined Plaintiff on June 22, 2009 and August 17, 2009. The ALJ cited to Dr. Roane's notes and included limitations based on Dr. Roane's findings. Specifically, the ALJ limited Plaintiff to light work based, in part, on Dr. Roane's finding that Plaintiff has chronic pain in her left arm, and limited Plaintiff's use of her neck.

Plaintiff also argues that the ALJ ignored Dr. Roane's reference "to EMG studies from

---

[2] Plaintiff also states that "[r]eports from Low Country Rheumatology also show that Plaintiff was having fatigue and back pain which was diagnosed as severe." Dkt. No. 36 at 7 (citing Tr. 312). The ALJ specifically mentioned the cited report: "Nevertheless, due to continued complaints of pain with some range of motion limitations found upon examination, the claimant was diagnosed with myofascial pain syndrome in September 2007." Tr. 23. Plaintiff has failed to identify any error as to the cited report or any other reports from Low Country Rheumatology.

December 2008 which shows that Plaintiff has chronic radiculopathy of C5-6." Dkt. No. 36 at 4. Although the ALJ did not mention this particular statement from Dr. Roane's report, the ALJ reported that "[e]lectrodiagnostic study in September 2008 indicated left C5-6 radiculopathy." Tr. 23. Further, Plaintiff has not cited to, and the court is unaware of, a report from an EMG study conducted in December 2008 in the evidence submitted by Plaintiff.[3] To the extent there was an EMG study in December 2008 containing the same finding (left C5-6 radiculopathy), that evidence would appear to be cumulative of evidence already considered by the ALJ.

Plaintiff objects to the Magistrate Judge's finding that the ALJ properly considered Dr. Hinson's opinion and that her decision to give it limited weight is supported by substantial evidence. Dkt. No. 36 at 4.[4] After a one-time neurological consultation, Dr. Hinson opined that Plaintiff was significantly disabled as a result of her chronic pain. However, the ALJ assigned that opinion limited weight as it was "inconsistent with findings upon general exam, including Dr. Hinson's treatment notes, and is apparently based on the claimant's subjective complaints." Tr. 22. The ALJ also noted that Dr. Hinson only evaluated Plaintiff on one occasion in April 2008. *Id.* Plaintiff contends that by discounting Dr. Hinson's opinion, "the ALJ and Magistrate [Judge] went against the Treating Physician Rule which states that the court is required to give great weight to the opinion of treating physicians." *Id.* Contrary to Plaintiff's articulation of the so-called "Treating Physician Rule," and as explained in the Report, the ALJ may discount a treating physician's opinion if it is not well

---

[3] New evidence submitted after the ALJ's decision showed that a November 1, 2010 EMG study was normal, and that there was "no evidence to suggest cervical radiculopathy at this time." Tr. 529.

[4] Plaintiff also objects to the ALJ's treatment of Dr. Hinson's opinion when evaluating Plaintiff's credibility. For the same reasons explained below in this section, the court finds no error as to the ALJ's treatment of this opinion evidence in the credibility analysis.

supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the case.[5]  *See* Report at 15-16.  The court agrees with the Magistrate Judge that the ALJ adequately considered Dr. Hinson's opinion that Plaintiff was disabled, and found that it was inconsistent with her own treatment notes from Plaintiff's one-time visit.[6]  The ALJ's decision to discount Dr. Hinson's opinion is supported by substantial evidence.

Plaintiff objects to the ALJ's treatment of the state agency physicians' opinions and argues that they "should not be given any weight since these doctors did not have all of Plaintiff's medical reports and did not even examine her." Dkt. No. 36 at 4.  As explained in the Report, "[t]he ALJ reasonably gave 'some weight' to their opinions because they were consistent with the evidence of record, which showed that the plaintiff retained the ability to perform some work." Report at 17 (citing Tr. 22).  The court, therefore, rejects Plaintiff's objections as to the medical opinions.

**Hypothetical to VE.**  Plaintiff objects to the Magistrate Judge's finding as to "the confusing hypothetical questions from the ALJ to the VE." Dkt. No. 36 at 4.  The VE initially understood the hypothetical person could not "maintain steadiness of the neck," which the VE explained meant that

---

[5] The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).  Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).  The ALJ must, however, explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.  Social Security Ruling (SSR) 96-2p; *see also* 20 C.F.R. § 416.927 (outlining factors an ALJ must consider when determining what weight to give a treating physician's opinion).

[6] The court also notes that Dr. Hinson did not explain why Plaintiff's chronic pain was disabling.  She noted that Plaintiff's mental status was "[n]ormal, with good orientation, memory, attention, language, and knowledge functions." Tr. 404.  Dr. Hinson ultimately recommended Botox treatments in Plaintiff's trapezius muscle. *Id.*

7

she could not move her neck. Tr. 63. The ALJ actually stated that the person was unable to "maintain a static position of her neck." Tr. 63. Based on the VE's initial misunderstanding, the VE determined that the hypothetical person would not be able to perform any jobs. However, upon further discussion, and after understanding that the ALJ's hypothetical person could move her neck but just not maintain a static position, the VE found that the hypothetical person could perform certain unskilled, light occupations. The court agrees with the Report that the VE properly understood and considered the hypothetical articulated by the ALJ. Through her objections, Plaintiff appears to argue that the hypothetical, as ultimately understood by the VE, was "improper" based on the evidence. Dkt. No. 36 at 5-6 (listing six medical reports). Plaintiff argues that the medical evidence is consistent with the hypothetical as first understood by the VE – that Plaintiff was unable to move her neck. All of the evidence cited by Plaintiff was properly considered by the ALJ, and Plaintiff has not shown that it supports a limitation that Plaintiff cannot move her neck. Substantial evidence supports the hypothetical posed by the VE, including the limitation that Plaintiff "cannot turn her neck to the extremes, cannot turn her neck rapidly, cannot maintain a static position of her neck [,]. . . and cannot reach and lift." Tr. 63.

**New Evidence Submitted to Appeals Council.** Finally, Plaintiff objects to the Magistrate Judge's conclusion that the Appeals Council was not required to make detailed findings as to new evidence when denying Plaintiff's request to review the ALJ's decision. Contrary to Plaintiff's position, the Fourth Circuit has held that the Appeals Council is not required to articulate its rationale for denying a request for review. *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011). In this case, the Appeals Council acknowledged the submission of new evidence, specifically listed the new evidence in its notice, and denied Plaintiff's request for review based on the new evidence. Unlike *Meyer*, Plaintiff's new evidence does not fill an evidentiary gap that the ALJ determined was lacking.

8

The evidence contains two reports pre-dating the ALJ's decision (December 13 and 15, 2009), showing that Plaintiff had restricted range of motion in her cervical spine, diminished right grip strength, and that additional back surgery was not recommended because surgery may trigger Plaintiff's fibromyalgia. Tr. 574-76. The records made after the ALJ's decision include a letter from Dr. Poletti, after Plaintiff's first visit, stating that Plaintiff has chronic pain and "limited motion in her neck and decreased reflexes in her hands and appropriate findings to potentially be considered for disability." Tr. 540.

The court has reviewed the new evidence that was submitted to the Appeals Council and agrees with the Magistrate Judge that the new evidence does not provide a basis for changing the ALJ's decision. *See* Report at 19-21. As fully explained in the Report, reviewing the entire record, the Commissioner's decision is supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, the court adopts the Report and Recommendation of the Magistrate Judge and affirms the decision of the Commissioner.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 22, 2013